Good morning, may it please the Court. I'm Elizabeth Olsen-White for the United States. I'm going to try to save two minutes for a rebuttal, but we'll see how that goes. All right. I'm not used to going first, so I'll try to remember that. Yes, more unusual position for us to see. There are a couple of facets to this case, but the fundamental question, what it all boils down to, is whether the armed robbery of a store that obtains inventory and supplies from out-of-state constitutes a violation of the Hobbs Act. And what this Court and every other court of appeals has said is that, yes, it does. The district court, in his written order, the written order contains one clearly erroneous factual finding and several erroneous conclusions of law. First of all, the Court says, this is at Excerpt of Record 7, that the current indictment does not allege effects on interstate commerce. What the indictment says very clearly is that the grand jury charges that the defendant did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect commerce. The language in the indictment tracks the statute, and this Court has said in several cases that an indictment that tracks the language of the statute is sufficient. So what he was charged with in the end, though, what he pled to had to do with the actual, not an attempt, correct? Yes. Okay. Yes. So what it boils down to, as you say, on the Hobbs Act is, is it your position that anytime you rob a store, which has goods that are purchased in interstate commerce, that satisfies the Hobbs Act? Yes. Because if you look at the cases, and I can understand what the district court was coming from, usually one of the reasons that is true is because they take the money and they don't get it back. So that supposedly, in a theoretical sense, makes it so they can't go out and continue or that they've had some impact on interstate commerce. So if you rob the store, go a few blocks away, they get the money back, what is the effect on interstate commerce? Three points that I'd like to make on that. One is, with respect to the money itself, once the robbery is done, I mean, I think this Court has never said that whether a robbery constitutes a Hobbs Act violation depends on how quickly the defendant is caught. So, you know, when the robbery happens, that's the, that is the Hobbs Act robbery. The fact that in this particular case, the police happened to be in the area and were able to catch the defendant quickly, I don't think that this Court has ever said that we look beyond the actual robbery itself to see how quickly the defendant is caught. Well, not quickly, but usually the person doesn't get the money right back, or often the money doesn't go right back in the tail, so to speak. No, it does not. And as I said, obviously, in this particular case, the money was recovered. I think it's sitting in a locker in Washoe County. The guy walks into the convenience store, which is clearly a store that purchases things in interstate commerce. He has a gun. Give me a dollar. The clerk gives him a dollar. Oops, police are coming. Here's the dollar back things anyway. Hobbs Act? Well, that could be, that could probably be charged as an attempt. I mean, if he doesn't actually leave, if he never actually takes it, but he takes possession. He has the dollar in hand. He takes possession of it. And then I give it back. Sure. I mean, de minimis is the standard. The other point is we've got, you know, it's probable or potential. It doesn't have to be actual, and that's a conclusion of law that the district court made. So our case law has been very broad about what constitutes a Hobbs Act, so stealing from the convenience store can be a Hobbs Act violation. Has anything, are there any cases where we've suggested that anything turns on whether it's an attempt or an actual crime? I didn't see any case like that. No. No. The district court, in his written order, talked about this probable or potential effect on interstate commerce and said correctly that this court has said in many, many cases that the impact or the effect has to only be probable or potential. The district court says in his order that that only applied, that this court has only applied that in attempt or conspiracy cases and not with respect to completed acts. That's simply not correct. I mean, there are at least nine cases that I found where the court used the probable or potential language with respect to a completed crime. Lynch, Acheson, Woodruff all contain that probable or potential language. Is that out of circuit? Are there any out of circuit cases supporting the district court? Yes. We cite the oh, supporting the district court, no. No. Not that I've been able to find. For once we're with them, right? Williams maybe was cited perhaps by Mr. Bellamy as talking about the actual effect. I mean, as to whether there's actual versus potential. Yes. And there's also, you know, there's also a difference, what this court sort of explored in the Embank case in Lynch, explored the Collins test, which was the Fifth Circuit case. Now, that made a distinction between a robbery of an individual and a robbery of a business and suggested that the test is somewhat different and perhaps somewhat higher. The threshold is somewhat higher when you're talking about the robbery of an individual, that there needs to be more proof that that individual, that that would deplete the resources, that he was generally engaged in interstate commerce and that sort of thing. But this clearly was, and the district court acknowledged that this was the robbery of a business engaged in interstate commerce. With respect to the ---- Which it could be. We wouldn't even be talking about this if the government had said as part of its proffer, well, the store clerk had to leave the store. But which meant, which meant either, I don't know if he closed it because he's a one-person store shop or he was unable to continue his duties, which impacted. But in all the government said, which as I understand was not you, but all the government says is robbery, basically. Yes. And the district court was looking for more and there was kind of big silence out there. Well, I guess the two points that I'd want to make about that. I believe that the plea agreement factual statement, I might be wrong about this, I believe that it did say that the clerk was brought to the location to identify him. He was, but that doesn't tell us anything. Well, it tells us that the clerk was taken from the store to the location where the defendant was. But the other point that I really want to make here is that this is not a sufficiency of the evidence case, right? I mean, the government turned over all the discovery to defendants counsel, defendants counsel looked at it, discussed it with his client. And the defendant pleaded guilty. And in a painstaking change of plea hearing, which we included in the record, you know, Judge Reed is sort of legend for his change of plea colloquies. He makes sure that the defendant understands every single word of the indictment. He has the prosecutor define firearm, define knowingly, define interference. You know, the defendant, he makes he made clear, Judge Reed made clear to the defendant that he understood that by pleading guilty, he was waiving his right to have the government prove the elements of defense beyond reasonable doubt to a jury. So to the extent that we're – that the district court, to the extent that he was relying on, you know, what evidence may or may not the government have been able to prove at trial, the defendant very clearly gave up that right. And so what we're looking at here is the indictment and what the defendant admitted. Now – I'd like to ask you a few questions about the plea agreement, because I was a little confused. I read through the plea agreement, and I didn't see it specify that the government would not bring or would move to dismiss charges. And I didn't see it specify that the plea agreement bound the court once the court accepted the plea agreement. All I saw was a nonbinding agreement to make a nonbinding recommendation. So is that correct? Yes. So it's an 11C1B plea agreement. And I don't really see any basis for the court to reject that sort of plea agreement, at least in the rules. Yes. That is correct. Was the district court mistaken on that? So it didn't – it didn't seem to me that the – its purported rejection of a plea agreement had any effect at all. Yes. And that's the second argument in our opening brief. I think that what happened, you know, the judge had expressed his concern about, you know, why this defendant, since he's not a prior felon, why is he being prosecuted in Federal court, and he was just going to dismiss the indictment. We asked for an opportunity – or he gave us an – offered us an opportunity to brief the issue, and we did. Then we come back, and he initially in his oral ruling found the Hobbs Act unconstitutional as applied to this defendant. And then at the very end he said, so that means I'm going to reject the plea agreement, and now I have to let you withdraw your plea. Do you want to do that? That was error, which we argue in the – Let me posit a different scenario. I think that under the rule 11c-5, that was an error because this case does not fit under, you know, actually withdrawing under A or C. Yes. So that seems to be an error. But it does seem to me, leaving aside the Hobbs question, because that is a separate, that if the judge thinks that the defendant is pleading to something for which there's not a factual basis, doesn't the judge always have the discretion and the authority under 11b-3 to reject the plea? And that's really what he was doing. It wasn't so much I'm letting you withdraw as he was saying in his view you could – that he didn't think there was the factual basis to meet Hobbs, and isn't that that he cited the wrong rule? And he may have even been wrong legally. I know that's your argument. But he cited the wrong rule. But if you have somebody who's trying to plead to something for which there's not a factual basis, the district court doesn't have to rule on that under 11c-5, does he? Well, in this case, you know, the defendant had already pleaded guilty. I mean, Judge Reed had found a factual basis, had found it as a matter of law that interstate commerce was or would have been affected, found that the guilty plea was knowing and voluntary. So there was a plea. So what we're talking about here is the withdrawal of a duly accepted guilty plea. Now, the district court was in error in relying on c-5, which allows him to – which requires him to allow a defendant to withdraw a guilty plea if he rejects the plea agreement under c-1a or c-1c. This was a c-1b plea, so it doesn't trigger that requirement under c-5. Well, what do you do if the – this is now before a different judge. Yes. Which it was here. And the defendant waltzes in, it's a bank robbery, there's not a single prof or nothing in the plea agreement or anywhere else that it's a Federal bank. Does the judge have to say, well, I'm just see no evil and off we go? No. I think there, what you might be able to rely on, and I think what it goes to is the other part of this, which is whether there's a fair and just reason. You know, a defendant can be permitted to withdraw his guilty plea after it's been accepted, which is where we are here, if there's a fair and just reason. And I think that if the – if a judge didn't realize at the sentence – at the change of plea hearing, but then realized prior to the sentencing hearing that, you know, there's no factual basis for this, that you might be able to say there's a fair and just reason. I mean, that's kind of what he's saying here. I know you disagree with him. Yes. That seems to me what he's really saying here. Yes. But we have also rejected that as a basis. I think it was maybe Labinia. So in Labinia, where the district court allowed the defendant to withdraw his plea agreement because he thought the – or the district court thought the Hobbs Act didn't support the plea agreement, and then they said, no, the district court was wrong, the Hobbs Act does support the plea, and then we – we – the remedy was that the plea had to be reinstated. Is that – does that continue as good law? Is that the – Yes. Yes. And that is the specific relief that we're asking for. I'm going to try to save my last minute. Oh, right. We forgot to get you the appellant. All right. You may. We'll hear from Mr. Bellamy's counsel. Please, the Court. I'm Dennis Cameron. I'm here on behalf of Mr. Bellamy, the appellee, which is a little different from my – me as well. But I think I'd like to address first the issue of allowing my client to withdraw his plea agreement. We responded to that issue because it was raised by the government. It's really a non sequitur to Mr. Bellamy. He is guilty of this crime. He's admitted it on at least three occasions. If the case is sent back to the State court where it belongs, he's going to plead guilty down there. If it remains in the Federal court, he's going to plead guilty. So it's not an issue that I want to really use a lot of time on because it's meaningless to him in the final outcome of the case. What I would like to talk about is why Judge Jones dismissed this case. And he and I basically had the same question. What is this case doing in Federal court? It's a man whose criminal history was one misdemeanor graffiti violation. He walked into a convenience store, pointed a gun at the clerk, took $135, was immediately apprehended. The court asked the question of, well, wouldn't interstate commerce be affected because the clerk had to leave the store. He didn't make the clerk leave the store. The police could have brought him back to the store to be identified. They were only a block away. And the police --- Right, but how does that affect the Hobbs Act? You can't sort of, you know, based on the path of the investigation, somehow take the Hobbs element out of it and say, well, if he didn't leave the store, because according to the U.S. attorney, its position would be it wouldn't matter. Money was taken. End of story. If I understand the Court's question correctly, you want to know how we justify the fact that it wasn't a violation of the Hobbs Act when money was taken. Well, first of all, he took money. He didn't take the merchandise that actually traveled in interstate commerce. So I think if you look at Judge Jones's decision, the distinction he's trying to make there is that there has to be an actual, albeit de minimis, effect on interstate commerce. But if you go to Rodriguez, I'm sympathetic to that. I don't think this case should be in federal court. But that doesn't mean there's not a legitimate basis for it. I mean, it seems silly to be in federal court. But in Rodriguez, basically they say robbing a store that does business in interstate commerce is enough. How could this panel either distinguish or do something different than Rodriguez? Well, I think you actually have to distinguish it, Your Honor, is the only way around it. Because we are really long on being right and short on law. Good candor. And well said. Suppose you – I mean, everybody is sympathetic why we have these things in federal court, but politicians make those decisions. We just apply it and they need guns and these things, they get into federal court. So we're going to have to follow the law. Suppose you were writing this opinion. You have to get around Woodruff. How would you distinguish Woodruff? I would distinguish Woodruff, Your Honor, the way all cases are distinguished. The law is made by the decision of the case, but the decision is predicated on the facts and circumstances of that particular case. Woodruff is a different defendant with different facts and circumstances. The overall holding is adverse to our side. But I think you really have to look at the individual facts to distinguish it. In this particular case, as I indicated – Oh, Woodruff is a mini-robbery. Robbery. I understand that, Your Honor. So what is the fact that's different here? Well, the fact that's different is how it was brought, Your Honor. I believe Woodruff had multiple – and I may have the cases confused because there are so many of them – but some had multiple robberies, some had defendants who were prohibited persons, others had defendants. Well, that isn't the thrust of Woodruff. I think Judge Ferris was very clear that we were cutting off the string. And I don't think you can say there was no coke taken, there was just money based upon Judge Ferris's opinion in Woodruff. And we couldn't just say we disagree with the whole theory. We'd have to say that Woodruff does not apply. And we can't just say it, we have to explain it. And I'm having difficulty distinguishing Woodruff. So even if I'm sympathetic with the idea that we shouldn't have everything in the federal court, I'm bound by Woodruff. So I was hoping you could tell me something that I could write or my colleagues could write that, without having a tongue-in-cheek, something specific that Woodruff is distinguishable from our case. Well, Judge, you're probably a better writer than me, but I'll tell you how I would do it. That's what I want to do. The law is an evolving thing. And I say that in all honesty because the people that ratified the Constitution of the United States, if they'd have known then they were signing a document that would allow the federal government to prosecute convenience store robberies that happen entirely within their state, that are investigated entirely by their police, that have nothing to do with the federal government, I don't think there's an investigative agency that investigates convenience store robberies for the federal government. I understand that. And I've studied how the founders felt about the Congress clause, as you have. But that doesn't get us around Woodruff. And I don't think you can unless you take into consideration the evolving force of the Tenth Amendment and the fact that in this particular case, as Judge Jones pointed out, there is no review or criteria as to what cases are going to take into the federal court to prosecute. This case is in the federal court because Mr. Bellamy confessed it was done in ten minutes, and the United States Attorney's Office could file it and get a conviction with very little effort, which would fluff up their statistical their statistics for the year. There's no other reason for it to be in federal court, other than it was a simple kill. Well, maybe, or maybe the U.S. Attorney is saying any time there's a gun involved, we're going to go for it because guns are terrible. We just don't know. Well, we do know, Your Honor, because Judge Jones asked him. And he says, clearly, if there's any criteria, it wouldn't be here. And also, it's not the only convenience store robbery that takes place in Reno, Nevada, on a weekly basis with a gun. If they were going to take them all, I wouldn't be here arguing it. But they're not. But that's a different argument than I thought you made in your brief. I mean, that's a basically kind of a discriminatory prosecution argument, which is different from saying the case shouldn't be in federal court at all. It is, Your Honor, but I was proffering that in the context of how I would differentiate it from the precedent cases that you were mentioning, the Woodruff case especially. You have to go out and look at what's really going on. What's the basis for what's happening in this case? And that way, you can distinguish it, even though the theory may be the same. And I think Judge Jones tried to distinguish it based on the language in the statute itself. And while that was a tortured decision, at least in my opinion, having read it many times, I think he was right. The statute actually requires some act, even if it's de minimis. And he tries to differentiate between de minimis and no effect at all. And I think he uses the penny analogy, which I thought was fairly cogent on his part. But how would we distinguish this probable or potential, then, if we adopted that, the probable or potential language that was in the cases? Well, I think that adopt – well, you don't. But I think that adoption was just as tortured as Judge Jones's decision as to probable or potential. It either has an effect or it doesn't. Mm-hmm. Mm-hmm. Well, I mean, I think one of the – he uses the quarter analogy. But in that analogy, he's talking about an individual. And I do think, while the Hobbs Act has been probably stretched as far as it could be, the one dividing line has been between certain individual robberies and businesses that operate in interstate commerce. So it would be hard to get on board with Judge Jones and his 25-cent argument. So, basically, if I hear you right, and I appreciate your position, we really would have to – it would have to be an embank ruling of this Court that would change the That, unfortunately, I believe, is an absolute correct statement of the circumstances. Okay. Well, and as you know, this panel is bound by precedent, but that doesn't preclude someone from petitioning for rehearing embank. And we do, as you know, from time to time, change course as an embank court. Not often, but it happens. And in conclusion, Your Honor, what I'm going to proffer to this Court is that the interplay of the Tenth Amendment with the Commerce Clause, as well as Judge Jones's caveat that due process may be affected if, in fact, there is not an actual effect on interstate commerce, as there was not in this case. The money was immediately returned. As I was trying to express prior, it wasn't Mr. Bellamy's action or fault that caused the clerk to leave the store. The police called him out. They could have just as easily brought him back there. So I don't think that can be a linchpin for an effect on interstate commerce. But even if the case were reversed and sent back to the district court, because I don't think dismissal of the indictment was appropriate, and then the U.S. attorney would proffer more facts that may be a relation to interstate commerce, I guess what you're saying is your client is right back where he started anyway. He is right back where he started, Your Honor. And I would hope that having gone through this exercise, the U.S. attorney might use some judgment in this case and send it back to the state court where it really belongs. But that's one of the outcomes I can't control. And that could be an option right this very day that you could discuss with the U.S. attorney. Well, we did discuss that with the U.S. attorney. But I think what we have here is the government trying to protect power that they have to bring these cases, not really whether or not it's applicable to Mr. Bellamy. Thank you. Thank you, Your Honor. Thank you. I just have a couple of points I'd like to make. First of all, the Supreme Court has said that the decision whether to prosecute is particularly ill-suited for judicial review. And there are a lot of factors that go into deciding whether to take a case. When Congress passed the Hobbs Act, they knew that they were making a federal crime out of something that was already a state crime. And so prosecutors in U.S. attorneys' offices consider a variety of factors in deciding when and whether to take a case. None of those factors are in the record because they're not – because they shouldn't be. That's not an appropriate place for them. These are prosecutorial discretion decisions that the U.S. attorney makes based on a number of factors. And what the Court has said is that as long as the prosecutor has probable cause to believe that an individual has committed an offense defined by a federal statute, the decision whether or not to prosecute and what charges to bring is entirely within the executive branch discretion. What the district court said in his order is that under the Hobbs Act, the government must show that interstate commerce was actually obstructed or delayed, not merely that the results were – that such a result was probable or potential. That is directly contrary to this Court's embanked decision in Lynch, which said the interstate nexus requirement is satisfied by proof of a probable or potential impact. The government need not show that a defendant's acts actually affected interstate commerce. There are 35 years of Ninth Circuit precedent making that point. And in those 35 years, not a single judge on this Court dissented on that point in any of those, I found, 19 cases in a Westlaw search. I think he pretty much acknowledged that point. Okay. We are – we are asking for very specific relief. We're asking for the indictment to be reinstated and for the guilty plea to be reinstated because there was no fair and just reason to let the defendant withdraw that. We're asking this case to be remanded with instructions to impose sentence. Thank you. I'd like to thank both of you for your arguments. Very well done. The case just argued is submitted.
judges: Wallace, McKeown, Ikuta